UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

TIMOTHY E. MCKINNEY,

        Plaintiff, : 06 Civ. 13486 (SCR)(MDF)

   v.

WAYNE E. BENNETT, : OPINION AND ORDER

        Defendant.

---

**STEPHEN C. ROBINSON, United States District Judge.**

Timothy E. McKinney, an African American male, filed this case against Wayne E. Bennett, the former superintendent of the New York State Police ("NYSP"), claiming that McKinney suffered employment discrimination on the basis of his race and gender in violation of 42 U.S.C. §§ 1981, 1983 and New York State Executive Law § 296, *et seq.* Currently before the Court is Bennett's motion for summary judgment on all of McKinney's claims. For the reasons set forth in this opinion, the Court grants Bennett's motion for summary judgment and dismisses the case in its entirety.

# I

## BACKGROUND

### A. The Parties

Defendant, Wayne E. Bennett, was employed by the NYSP in 1968. He became First Deputy Superintendent in 1994 and Superintendent in 2003. Bennett retired from the NYSP in 2007. (Bennett Decl. ¶¶ 2,7.)



Timothy E. McKinney, Plaintiff in this case, is an African-American male who served as a New York State Trooper from 1987 until his termination on April 22, 2005. (Hogan Decl. ¶ 2.)

## B. Disciplinary Actions Taken Against Trooper McKinney

McKinney was disciplined on multiple occasions during his career as a New York State Trooper, culminating with his termination for the sexual harassment of two female members of the NYSP in 2005.

In 1994, Plaintiff was suspended without pay for thirty days and returned to six months probationary status for having conversations with a woman "where it could reasonably be assumed" he was "accepting an offer of sex with her, in exchange for favorable assistance with her ticket." (Hogan Decl. Ex. G at 5.) In 1997, Plaintiff was suspended without pay for five days and returned to six months probationary status for placing a female NYSP employee in a headlock. (Hogan Decl. Ex. G.) In 2005, McKinney was found guilty of placing a female trooper's hand on his erect penis through his clothing (Hogan Decl. Ex. B at 7) and of engaging a different female sergeant in conversation amounting to sexual harassment in violation of State Police policy (Hogan Decl. Ex. B at 4). The 2005 charges against McKinney lead to his termination as an NYSP employee on April 22, 2005. The women who were the victims of McKinney's sexual harassment were not the subjects of any NYSP disciplinary action for these incidents.

## C. Other Disciplinary Investigations Involving Trooper McKinney

McKinney was also the subject of a number of investigations stemming from complaints that did not lead to official NYSP disciplinary action. Two of these other investigations are particularly relevant to this case.

In 1996-1997, NYSP conducted an investigation following the receipt of an anonymous letter stating that McKinney offered money to a resident's 13-year-old niece in return for oral sex, and that McKinney had engaged in sexual relations with other young girls. (O'Connor Decl. ¶ 3.) The accusation ultimately could not be substantiated and the files were purged in accordance with NYSP procedures. (O'Connor Decl. ¶ 3.)

In 1997, NYSP conducted an overlapping investigation into allegations made in a confidential informant's tip that identified McKinney and other troopers, all of whom happen to be African American, as linked to a drug enterprise and specifically identifying McKinney as being sexually involved with two underage girls. (O'Connor Decl. ¶ 5.)

Two meetings were held in 1997 relating to the earlier accusations of McKinney's behavior towards a resident's 13 year-old niece. McKinney was present at both meetings but Bennett was only present at the second. During a break from the first meeting, McKinney saw a chart with his name and the names of other African American Troopers. Bennett recalls that during this second meeting, he advised McKinney that the investigation involving the "associational chart" containing several African American Troopers' names was a different matter where no complaint was filed against McKinney. (Bennett Decl. ¶ 5; Ex. A at 2.) McKinney testified about his exchange with Bennett, which led him to believe that Bennett was racist against him:

Q. What did you say to them about the racist --

A. I said to the superintendent that I felt that the Division of State Police was racist.

Q. Did you cite him any specific examples as to why you believe that?

A. No.

Q. Did he ask you to give him any specific examples as to why you believe that?

A. I don't believe -- I don't remember. But I don't believe he did.

Q. Did anyone else say anything about the State Police being racist at that meeting?

A. No.

Q. Was there any reply to your assertion that the State Police was racist?

A. Yes.

Q. What was their reply?

A. There's no racism in the State Police.

Q. Who said that?

A. The superintendent.

Q. Did he give any specific information to backup his statement that there was no racism in the State Police?

A. No.

Q. Did he state that verbatim, there's no racism in the State Police?

A. Yes.

[brief colloquy clarifying that "Superintendent" referred to Bennett]

Q. Do you remember any of the other discussion that took place at that meeting?

A. I remember my response to him when he said that.

Q. What was your response?

A. For you to make a statement like that I wonder if you're not racist.

Q. What did he say to that?

A. His exact his words -- it was like he didn't feel I had a right to say that to him. He was offended. He didn't like it.

Q. Were you in effect accusing him of racism?

A. For that statement, for a person to believe what he said, I was -- in my mind I felt he was racist.

Q. Did you have any other reason to believe he was racist other than the fact that he made the comment that he did, there was no racism in the State Police?

A. No, that was enough for me.

Q. At this time, is there any information that you have other than that comment he made to you that leads you to believe he is racist?

A. No.

Q. Did anyone discuss any other specifics about why this State Police might or might not be racist at that meeting?

A. No.

(McKinney Dep. 167-69.) This conversation is the sole basis for McKinney's belief that Bennett was racist against him and is the only personal contact between them. (McKinney Dep. 167-69, 173.) No disciplinary action resulted from this investigation. The files cannot be located and are believed to have been purged pursuant to NYSP procedures. (O'Connor Decl. ¶ 6.)

### D. The 2005 Disciplinary Action Against Trooper McKinney

This case arose as a direct response to the disciplinary action taken against Trooper McKinney in 2005. The investigation into allegations of misconduct against McKinney began in August 2004 when the Internal Affairs Bureau ("IAB") received a complaint from a civilian inmate at the Westchester jail. (Loughran Decl. ¶ 2.) Captain Lisa D. Loughran was assigned to the 2004 McKinney investigation and worked on the matter from August 2004 until McKinney's termination in April 2005. (Loughran Decl. ¶ 2.) At first, the investigation involved a number of

5

allegations of misconduct made by civilian prisoners but was expanded when a complaint involving McKinney's treatment of female members of the Division of State Police was brought to the attention of the IAB. (Loughran Decl. ¶ 3.) The investigations were eventually bifurcated and Investigator Frank Keyser was assigned to the investigation of McKinncy's misconduct towards female NYSP employees. (Loughran Decl. ¶ 4.) As a result of IAB's investigation of both cases of alleged misconduct, a report was issued recommending numerous charges against McKinney. (Loughran Decl. ¶ 5.) The Division of State Police filed charges against McKinney on or about November 2, 2004. (Loughran Decl. ¶ 5.) In the course of his duties, Superintendent Bennett signed the charges against Trooper McKinney (Bennett Decl. ¶ 9), however, Bennett neither participated in the investigation nor initiated the charges against McKinney (Loughran Decl. ¶6; Bennett Decl. ¶ 9). First Deputy Superintendent Preston Felton, an African-American male, approved the charges. (Bennett Decl. ¶ 10; Hogan Decl. Ex. C.)

The charges were subject to an evidentiary hearing pursuant to state regulations, before a board of three commissioned NYSP officers, one of whom was selected by McKinney. (Hogan Decl. ¶¶ 3-5, 7-8.) Bennett did not select the remaining Hearing Board members, as their selection was delcgated to First Deputy Superintendent, Preston Felton. (Bennett Decl. ¶ 12.)

At the four-day hearing in 2005, McKinney and NYSP were represented by their respective counsel. Numerous documents were submitted at the hearing and thirty-one witnesses testified including McKinney and the two victimized female members of the NYSP, Sergeant Boucher and Trooper Winterfeldt. (Hogan Decl. Ex. F.) The board issued its decision on April 22, 2005, finding that sufficient evidence established that McKinney grabbed Trooper Winterfeldt's hand and placed it on his erect penis through his clothing, and that he engaged Sergeant Boucher in conversation amounting to sexual harassment in violation of NYSP policy.

(Hogan Decl. Ex. B.) In recommending employment termination as the penalty, the board gave weight to its review of McKinney's credibility and his personnel file including McKinney's prior incidents of misconduct towards women. (Hogan Decl. Ex. B.)

Bennett did not have any contact with the Hearing Board during McKinney's disciplinary hearing. In fact, Bennett was not involved until his review of the panel's final recommendations. (Bennett Decl. ¶ 12; Hogan Decl. ¶ 14.) Bennett reviewed the board's decision as well as portions of the record and determined that the Hearing Board "had a basis to substantiate their conclusions." (Bennett Decl. ¶ 12.) Bennett accepted the recommendations of the Hearing Board and dismissed McKinney from NYSP on April 22, 2005. (Hogan Decl. ¶ 12; Ex. A.) In his answer and moving papers, Bennett denies that race or gender formed any part of his decision to terminate McKinney. (Bennett Decl. ¶ 13.)

### E. Procedural Background

McKinney challenged his dismissal from the NYSP in an Article 78 proceeding in New York State Court. The Appellate Division unanimously rejected the challenge, finding that substantial evidence established that McKinney's conduct constituted sexual harassment in violation of NYSP policy. *McKinney v. Bennett*, 31 A.D.3d 860 (N.Y. App. Div. 2006). Shortly after initiation of the present lawsuit, the Court denied Bennett's motion for dismissal pursuant to issue preclusion and the *Rooker-Feldman* doctrine. *See* Memorandum Decision and Order dated May 7, 2007 (Docket entry # 12).

McKinney's complaint alleges discrimination on the basis of race and gender in his dismissal from the NYSP in 2005 under 42 U.S.C. §§ 1981, 1983 and the New York Executive Law § 296 *et seq.* in violation of the equal protection clause and what McKinney characterizes as

a prohibition against "selective prosecution." McKinney's retaliation claim pursuant to the First Amendment is brought under § 1983 seeking compensatory and punitive damages as well as attorneys' fees.

## II

## DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c). Summary judgment is inappropriate unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005) (citing FED. R. CIV. P. 56(c)). In conducting this inquiry, all facts and reasonable inferences must be construed in favor of the non-moving party, here, McKinney. *Id.*, at 69-70. This Court does not evaluate the weight of the evidence, judge the credibility of witnesses or determine the ultimate truth of the matter; rather, the Court determines whether there exists a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Anderson,* 477 U.S. at 252. Rather, the nonmoving party must show that there is evidence upon which a jury reasonably could find for the plaintiff. *Id.* This standard is equally applicable in the fact-intensive context of discrimination cases, "a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997); *Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir. 2001).

### B. Employment Discrimination Claims

McKinney claims that he was discriminated against on the basis of race and gender under 42 U.S.C. §§ 1981, 1983 and New York State Executive Law § 296, *et seq.*[1] Title 42, section 1981 of the United States Code provides that

> all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. In order to establish a prima facie case of discrimination, McKinney must show that: (1) he is a member of a protected class; (2) he was qualified to perform the duties of his position; (3) he suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of discrimination. *Williams v. R.H. Donnelly*

---

[1] The employment discrimination claims under § 1981 are subsumed within the claims under § 1983, which is the vehicle for enforcing those rights. *Patterson v. County of Oneida,* 375 F.3d 206, 225 (2d Cir. 2004).

9

*Corp.*, 368 F.3d 123, 126 (2d Cir. 2004) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).[2]

### 1. The circumstances surrounding McKinney's dismissal do not give rise to an inference of discrimination.

There is no dispute that McKinney has demonstrated the first three requirements of a prima facie discrimination case.[3] Thus, the Court now turns to the crux of this case, whether the circumstances surrounding the adverse employment action, McKinney's termination, give rise to an inference of discrimination. In determining whether the circumstances surrounding the adverse employment action give rise to an inference of discrimination the Court considers all of the evidence surrounding Bennett's decision to terminate McKinney. Much of the evidence that McKinney offers in support of his claims is not linked to Bennett or his decision to terminate McKinney. Specifically, McKinney points to the following evidence in support of his discrimination claims: the lack of Black NYSP members promoted to high-ranking positions; the segregation of Troopers in the NYSP barracks on the basis of race; the allegedly disparate treatment of white NYSP Troopers disciplined for creating a hostile racial work environment; and the NYSP's disparate treatment of the female victims of McKinney's sexual harassment. While this evidence may be relevant to whether the NYSP discriminated on the basis of race and gender, it is not very probative of Bennett's individual motives because there is no evidence that he personally took such actions.

The remainder of the evidence fleshes out the actual circumstances surrounding McKinney's termination. In 1999 McKinney complained to Bennett about his belief that the

---

[2] These cases outline the required showing for a prima facie case of discrimination under Title VII. The same standard is applied to discrimination cases arising under 42 U.S.C. § 1983. *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004).

[3] Defendant has not challenged Plaintiff's proof of the first three requirements of a discrimination claim: that he is a member of a protected class, that he is qualified for his position, and that he suffered an adverse employment action when he was terminated in 2005. *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment dated July 25, 2008 (Docket Entry # 22), at 13.

10

NYSP was a racist institution on the basis of his observation of an associational list that contained only African American Troopers, including himself. Bennett responded by denying the existence of any racism in the NYSP. McKinney then proceeded to accuse Bennett himself of being racist. There was no further interaction between McKinney and Bennett until 2005 when Bennett signed the charges and terminated McKinney from employment with the NYSP.

Bennett was not involved in the investigation, the decision to bring charges, or in the hearing of McKinney's infractions in 2005. At the hearing, evidence was presented and testimony was heard regarding the accusations of misconduct against McKinney. McKinney also introduced evidence and testimony about his belief that there was racism in the NYSP. On April 22, 2005, the Hearing Board found McKinney guilty of grabbing a female trooper's hand and placing it on his erect penis through his clothing, and of engaging another female sergeant in conversation amounting to sexual harassment in violation of NYSP policy. (Hogan Decl. Ex. B at 7.) Taking its findings into consideration as well as McKinney's disciplinary history, the Board recommended employment termination as the penalty for McKinney's infractions. (Hogan Decl. Exh. B.) Upon review of the hearing and recommendations, Bennett approved the recommendations and terminated McKinney's employment with the NYSP. McKinney has not demonstrated any improper actions or offered any circumstantial evidence that shows that Bennett acted with bias in making his decision to terminate McKinney's employment. The evidence presented does not raise an inference of discrimination surrounding Bennett decision to terminate McKinney and this Court finds that no reasonable jury could disagree.

## 2. Bennett's legitimate reasons for terminating McKinney were not pretextual.

Moreover, McKinney has failed to demonstrate that Bennett's legitimate reasons for terminating McKinney's employment were pretextual. To survive a motion for summary judgment, where the defendant has shown a legitimate reason for the action taken, a plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 125 n.11 (2d Cir. 2003) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). In this case the legitimate reason for terminating McKinney is that he created a hostile working environment for women. This reason is based on the findings of a neutral hearing board following an evidentiary hearing. It is well established in New York State that "an administrative determination regarding discipline will be afforded heightened deference where a law enforcement agency such as the State Police is concerned." *Fortune v. State of New York, Div. of State Police*, 293 A.D.2d 154, 157 (N.Y. App. Div. 2002) (collecting cases). Where, as here, that decision follows an evidentiary hearing and is based on substantial evidence, the plaintiff, "to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact – e.g. new evidence not before the tribunal – or that the impartiality of the proceeding was somehow compromised." *Collins v. New York City Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002). McKinney has not pointed to any new evidence. Nor has McKinney offered any persuasive arguments to support his claim that the proceedings were somehow impartial or biased.

McKinney's attempts to discredit the Hearing Board's determinations about the female NYSP employees are both specious and collaterally estopped. "The fundamental notion of the

12

doctrine of collateral estoppel, or issue preclusion, is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 547 F.3d 109, 112 n.1 (2d Cir. 2008) (citation omitted). The issue of whether the Hearing Board's determinations were reasonable was necessarily litigated and decided by the state court in the Article 78 proceeding. *See McKinney v. Bennett*, 31 A.D. 860, 862 (N.Y. App. Div. 2006) (finding that the evidence supported the charges and that the penalty of dismissal was proper).

Finally, McKinney's argument that the decision was pretextual because it was based on "potential" or future hostile work environment, erroneously relies on the language used by the defense attorney in his moving papers and ignores the actual language in the Hearing Board's recommendation, which specifically states that McKinney has already created a hostile work environment. (Hogan Decl. Ex. B at 12-13.) Moreover, the Board's concern about McKinney's future conduct is neither unreasonable nor has McKinney shown it to be pretextual where the concerns are substantiated by McKinney's actual and persistent creation of a hostile work environment for women.

### C. Selective Enforcement Claim

McKinney raises a separate claim for selective enforcement[4] alleging that the women involved in the 2004-2005 incidents, as well as the white Troopers who created a hostile work environment through racial intimidation, were disparately treated on account of their gender and race respectively. To demonstrate a selective enforcement claim, McKinney must show that: (1) he was selectively treated in comparison with someone who was similarly situated; and (2) the selective treatment was prompted by impermissible considerations such as race, religion,

---

[4] Plaintiff fashioned this claims as a "selective prosecution" claim.

13

intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007). Generally, whether parties are similarly situated is a question for the jury but "a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Id.* at 790-791 (citation omitted). A successful disparate treatment claim requires a showing that the complaining party is similarly situated "in all material respects" to the parties with whom he seeks to compare himself to. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). No reasonable jury could find that McKinney is similarly situated to either his female victims or the white troopers he attempts to compare himself too. McKinney has not shown these people to have a comparable disciplinary history to his own or to have any disciplinary history at all, a factor considered by the hearing board in recommending termination as the penalty for McKinney. Additionally there is no dispute that the women were different because they were McKinney's victims and are therefore incapable of being similarly situated to McKinney, their aggressor. As previously discussed, McKinney has not linked any of these other troopers to Bennett; thus, there is no reason to impute any discrepancies in discipline on Bennett. Because no reasonable jury could find that McKinney is similarly situated to the other troopers, summary judgment is hereby granted, dismissing McKinney's selective enforcement claim.

**D. Retaliation Claim**

McKinney's retaliation claim fails because he has not shown a causal connection between the protected activity – his statement about racism in the NYSP – and the adverse action – his termination. To establish a prima facie case of retaliation, McKinney must show:

14

"[1] participation in protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." *Richardson*, 532 F.3d at 123 (citation omitted).

Even assuming arguendo that McKinney is able to demonstrate the first two requirements, the First Amendment claim fails because there is no evidence of a causal connection between the protected activity and the adverse employment action. Proof of causal connection can be established "directly through evidence of retaliatory animus directed against [the] plaintiff . . . [or] indirectly by showing that the protected activity was followed closely by the discriminatory intent." *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987) (internal citations omitted). McKinney has shown neither. McKinney has not set forth any evidence showing a retaliatory animus. McKinney points exclusively to the fact that Bennett responded to McKinney's 1999 statement about racism in the NYSP by stating his own belief that there is no racism in NYSP. This statement does not evince a retaliatory nature. No other evidence was offered. McKinney has also failed to demonstrate a causal connection on the basis of the proximity of the events in question. In order to show a causal connection on the basis of temporal proximity, the events in question must have been very close in time. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (finding that 20 months does not prove causality and citing two circuit cases holding three and four months, respectively, are not close enough to establish a causal connection). In this case there is a six-year gap between the protected statement and the allegedly retaliatory action, McKinney's termination. This is simply too long of a delay to form the sole basis of a retaliation claim.

McKinney also failed to show that the legitimate reason offered to explain the adverse action was a pretext for retaliation. If the plaintiff makes a prima facie showing of retaliation,

15

the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's action. *See Richardson*, 532 F.3d at 125. If the employer articulates that reason, the presumption of retaliation drops out and the plaintiff must show that the employer's proffered reason was merely a pretext for retaliation. *Id.* at 126. As discussed above, McKinney has not set forth any evidence to suggest, much less prove, that the legitimate reasons offered for McKinney's termination, as supported by the Hearing Board's findings, were a pretext for either discrimination or retaliation. Therefore, Bennett is entitled to summary judgment on McKinney's First Amendment Claim.

## II

## CONCLUSION

In accordance with this opinion, the Court grants Bennett's motion for summary judgment in its entirety, dismissing all of McKinney's claims.

The Clerk of the Court is ordered to close docket entry 21, to term all outstanding motions and close this case, docket number 06 Civ. 13486.

*It is so ordered.*

Dated: White Plains, New York
September 16, 2009

Stephen C. Robinson, U.S.D.J.